IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEVIN WILLIAMS, *Plaintiff,* v. JOHN O'CONNOR, et al., *Defendants.* | CIVIL ACTION NO. 14-02667 |

**PAPPERT, J.** February 2, 2017

## MEMORANDUM

On March 3, 2012 Devin Williams was a passenger in Michael Jacobs's car in Philadelphia. (Amended Compl., ¶ 8, ECF No. 8.) Jacobs was driving Williams to meet Williams's girlfriend and the pair stopped at Williams's house so he could pick up a change of clothes. (*Id.* ¶ 9.) While Williams was inside, Philadelphia Police Officer John O'Connor and a fellow officer saw Jacobs sitting in his car counting money; they then saw Williams return to the car with a shopping bag. (*Id.* ¶¶ 10–12.) When Jacobs and Williams resumed driving, the officers followed the car briefly before pulling it over. (*Id.* ¶ 13.)

Williams contends that the officers immediately ordered him out of the car and frisked him, though they did not do either to Jacobs. (*Id.* ¶¶ 14–16.) Williams is African-American and Jacobs is white. (*Id.* ¶ 8.) During their search, the police found several small bags of marijuana in Williams's pants pocket. The officers put Williams in their police car until another car could arrive to transport him. (*Id.* ¶ 17.) While waiting in the police car, Williams hid his gun—somehow not detected during the frisk—under the seat. (*Id.* ¶ 17.) Williams was arrested and subsequently charged with various crimes. He spent approximately thirteen months in prison

1

awaiting trial.  (*Id.* ¶¶ 20 & 21.)  A state court judge eventually suppressed the evidence gathered during the traffic stop, and Williams was not convicted of any crimes.  (*Id.* ¶ 22.)

Williams sued O'Connor, other officers and the City of Philadelphia, though due to amendment of Williams's original complaint and his subsequent voluntary dismissal of other defendants, Officer O'Connor is the only remaining named defendant.  *See* (ECF Nos. 8 & 25).  Williams contends that O'Connor violated his Fourth and Fourteenth Amendment rights by illegally searching and seizing him and selectively enforcing the laws against him.  Trial begins on February 8, 2017 and O'Connor has filed two motions *in limine*.  The first seeks to preclude evidence of Williams's incarceration and alleged lost wages resulting from the traffic stop and arrest.  (ECF No. 39.)  The second motion asks the Court to bar Williams from introducing into evidence the judge's suppression decision.  (ECF No. 40.)  For the reasons given below, the first motion is granted in part and the second motion is granted in its entirety.

## I.

In ECF No. 39, O'Connor contends that Williams may "only recover damages based on the three minutes separating his stop from . . . his arrest," and evidence of subsequent incarceration or lost wages is therefore irrelevant and inadmissible.  *See* (*id.*)  O'Connor relies on *Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2001), for the proposition that a plaintiff "cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution."  (ECF No. 39, at 4.)  In *Hector*, the Third Circuit Court of Appeals determined that a § 1983 plaintiff alleging Fourth Amendment violations cannot recover damages for injuries that arise from the discovery of incriminating evidence during an unlawful search.  *Hector*, 235 F.3d at 157.  The Third Circuit reasoned that the damages resulting from the later prosecution are "too unrelated" to the privacy interests the Fourth Amendment seeks to

protect. *Hector*, 235 F.3d at 157 (citing *Carey v. Piphus*, 435 U.S. 247, 264–65 (1978)), *see also id.* ("[T]he damages available under § 1983 depend on the type of constitutional right asserted." (citing *Carey*, 435 U.S. at 265); *Carey*, 435 U.S. at 265 ([T]he elements and prerequisites for recovery of damages appropriate to compensate injuries caused by the deprivation of one constitutional right are not necessarily appropriate to compensate injuries caused by the deprivation of another. . . . [T]hese issues must be considered with reference to the nature of the interests protected by the particular constitutional right in question.")). Williams therefore cannot recover, under his illegal search and seizure claim, damages for his incarceration or lost wages. *See Hector*, 235 F.3d at 157 ("The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all.").

Williams's alleged Fourth Amendment injury occurred during the search and seizure, not his subsequent detention. *See Alvin v. Calabrese*, 455 F. App'x 171, 178 (3d Cir. 2011) ("The alleged damages [the plaintiff] claims to have suffered after his arrest were not the direct result of an invasion of his privacy in violation of the Fourth Amendment."). Any evidence of Williams's incarceration or wages allegedly lost while he was incarcerated is therefore irrelevant and inadmissible in the context of his Fourth Amendment claim.

O'Connor contends that *Hector*'s reasoning extends beyond the Fourth Amendment and applies to claims under the Fourteenth Amendment as well. He cites an unpublished and non-precedential Third Circuit Court of Appeals case, *Washington v. Hanshaw*, 552 F. App'x 169 (3d Cir. 2014). In that case, the plaintiff brought "a virtual cornuocopia of constitutional tort[ ]" claims, each purportedly grounded in the Fourteenth Amendment. 552 F. App'x at 172.[1] The Third Circuit held that a plaintiff guilty of the underlying offense could not recover damages for

---

[1] Washington's claims included "(1) violation of procedural due process, (2) right to substantive due process, (3) denial of right of access to court, (4) deprivation of the right to liberty, (5) wrongful prosecution, (6) wrongful coniviction, and (7) wrongful incarceration." *Washington*, 552 F. App'x 169 (3d Cir. 2014).

later incarceration. The Court stated: "We believe our reasoning in *Hector* compels the result here, notwithstanding [the plaintiff's] reliance on the Fourteenth rather than the Fourth Amendment." *Id.* at 173.

*Washington*'s holding is not, however, as broad as O'Connor contends. In that case, the plaintiff purported to bring Fourteenth Amendment claims that were, in reality, allegations of Fourth Amendment violations couched in the language of the Fourteenth Amendment. *See id.* at 173 ("The conduct and harm Washington alleges are the same types as those asserted in *Hector*: the police discovered incriminating evidence in the course of a search later determined to be unconstitutional."). The court in *Washington* therefore noted that the plaintiff's claim was "akin to a claim asserting 'a substantive right under the . . . Fourteenth Amendment to be free from criminal prosecution except upon probable cause." *Id.* at 172. Faced with this attempt to expand *Hector*, the Third Circuit noted that the Fourth Amendment "provides an explicit textual source of such constitutional protection," and refused to permit the plaintiff to collect damages for events occurring after the search. *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Williams's situation is different. While the Plaintiff in *Washington* alleged "the same types [of claims] asserted in *Hector*," *Washington*, 552 F. App'x at 173—that is, claims that ultimately sound in Fourth Amendment violations—Williams's Fourteenth Amendment selective enforcement claim is distinct from his Fourth Amendment claim. He contends that he not only was subjected to an unlawful search, but also that he was treated differently from a similarly situated individual, and that different treatment was based on the impermissible factor of race, a distinct constitutional interest. *See Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (detailing requirements of a Fourteenth Amendment selective enforcement claim).

Williams's Fourteenth Amendment selective enforcement claim raises issues distinct from his Fourth Amendment unlawful search and seizure claim. Because he has an equal protection interest protected by the Fourteenth Amendment, Williams may recover damages for lost wages and the time he spent incarcerated. *Cf., e.g.*, *Hector*, 235 F.3d at 157 ("[T]he damages available under § 1983 depend on the type of constitutional right asserted." (citing *Carey*, 435 U.S. at 265)). Evidence of lost wages and time incarcerated is both relevant and highly probative of Williams's damages. Williams may therefore introduce this evidence to show damages for his Fourteenth Amendment selective enforcement claim only.

## II.

O'Connor also contends that evidence of the state court's suppression decision is inadmissible. He argues that the decision is irrelevant under Federal Rule of Evidence 401 and that even if relevant, the probative value of the suppression decision is substantially outweighed by the risk of unfair prejudice such that the evidence is inadmissible under Rule 403. Williams contends that the evidence is relevant and highly probative, because O'Connor's motivations and credibility are a jury question, and would potentially demonstrate that the search and seizure at issue here was unlawful.

Evidence of the state court's suppression decision is inadmissible under Rule 403. Whatever the decision's probative value may be, it will be substantially outweighed by unfair prejudice and risk of confusing the jury. Jurors may give undue weight to the judge's decision. Whether there was reasonable suspicion for O'Connor to stop Jacobs and Williams is an ultimate, if not dispositive, fact at issue in this case. O'Connor will be highly prejudiced if evidence of the state court's decision regarding the ultimate question is admitted. *Cf. Thomas v. O'Brien*, 539 F. App'x 21, 22 (2d Cir. 2013) (upholding magistrate's decision to preclude

evidence of state court suppression decision where doing so risked jury confusion); *cf. also Jackson v. City of Philadelphia*, No. 11-4294, 2013 WL 101779, at *1 (E.D. Pa. Jan. 8, 2013) (addressing question of issue preclusion and noting that "[c]ase law in this Circuit has established that a state court finding of no probable cause is not ordinarily binding in a subsequent § 1983 action" because the parties are different in the state court proceeding). Williams's § 1983 claim is distinct from the initial criminal case; the suppression decision occurred in a separate proceeding between different parties. A previous decision by a judge may foreclose the issue for the juror, despite the fact that it will be the jury's duty in this case to determine whether reasonable suspicion existed.

There is also a substantial risk of misleading or confusing the jury. Jurors will be forced to speculate about the suppression decision; the reasons for that decision are unknown. The jury will hear for themselves the reasons for the traffic stop and can make their own decision as to its propriety.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
